**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| LAN MONG TRUONG, | No. ED CV 15-2149-PLA |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

      Plaintiff filed this action on October 16, 2015, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on November 6, 2015, and November 19, 2015. Pursuant to the Court's Order, the parties filed a Joint Stipulation on June 7, 2016, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

**II.**

**BACKGROUND**

Plaintiff was born on May 3, 1970. [Administrative Record ("AR") at 19, 169, 173.] She has past relevant work experience as a home attendant and teacher aide II. [AR at 19, 44.]

On April 25, 2012, plaintiff protectively filed an application for a period of disability and DIB, and on April 27, 2012, she protectively filed an application for SSI payments, alleging in both that she has been unable to work since August 1, 2010. [AR at 10, 169-72, 173-81.] After her applications were denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 10, 118-20.] A hearing was held on February 18, 2014, at which time plaintiff appeared represented by an attorney, and testified on her own behalf. [AR at 26-47.] A vocational expert ("VE") also testified. [AR at 43-46.] On April 22, 2014, the ALJ issued a decision concluding that plaintiff was not under a disability from August 1, 2010, the alleged onset date, through April 22, 2014, the date of the decision. [AR at 10-21.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 5-6.] When the Appeals Council denied plaintiff's request for review on September 18, 2015 [AR at 1-3], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.


**III.**

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's

1  decision, the Court examines the administrative record as a whole, considering adverse as well
2  as supporting evidence. <u>Mayes v. Massanari</u>, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted);
3  <u>see Ryan v. Comm'r of Soc. Sec.</u>, 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must
4  consider the entire record as a whole and may not affirm simply by isolating a specific quantum
5  of supporting evidence.") (citation and internal quotation marks omitted).  "Where evidence is
6  susceptible to more than one rational interpretation, the ALJ's decision should be upheld." <u>Ryan</u>,
7  528 F.3d at 1198 (citation and internal quotation marks omitted); <u>see Robbins v. Soc. Sec. Admin.</u>,
8  466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the
9  ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.")
10 (citation omitted).

11
12                                      **IV.**
13                         **THE EVALUATION OF DISABILITY**

14         Persons are "disabled" for purposes of receiving Social Security benefits if they are unable
15 to engage in any substantial gainful activity owing to a physical or mental impairment that is
16 expected to result in death or which has lasted or is expected to last for a continuous period of at
17 least twelve months.  42 U.S.C. § 423(d)(1)(A); <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257 (9th Cir.
18 1992).

19
20 **A.      THE FIVE-STEP EVALUATION PROCESS**

21         The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing
22 whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; <u>Lester v. Chater</u>, 81 F.3d 821,
23 828 n.5 (9th Cir. 1995), <u>as amended</u> April 9, 1996.  In the first step, the Commissioner must
24 determine whether the claimant is currently engaged in substantial gainful activity; if so, the
25 claimant is not disabled and the claim is denied.  <u>Id.</u>  If the claimant is not currently engaged in
26 substantial gainful activity, the second step requires the Commissioner to determine whether the
27 claimant has a "severe" impairment or combination of impairment significantly limiting  her ability
28 to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  <u>Id.</u>

1   If the claimant has a "severe" impairment or combination of impairments, the third step requires

2   the Commissioner to determine whether the impairment or combination of impairments meets or

3   equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404,

4   subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If

5   the claimant's impairment or combination of impairments does not meet or equal an impairment

6   in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

7   sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled

8   and the claim is denied. Id. The claimant has the burden of proving that she is unable to

9   perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a

10  prima facie case of disability is established. Id. The Commissioner then bears the burden of

11  establishing that the claimant is not disabled, because she can perform other substantial gainful

12  work available in the national economy. Id. The determination of this issue comprises the fifth

13  and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at

14  828 n.5; Drouin, 966 F.2d at 1257.

15

16  **B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

17          At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since

18  August 1, 2010, the alleged onset date.[1] [AR at 12.] At step two, the ALJ concluded that plaintiff

19  has the severe impairment of status post fusion and discectomy of the cervical spine at C5 to C6.

20  [Id.] He found plaintiff's alleged impairments of ovarian tumor and depression to be non-severe.

21  [AR at 12-13.] At step three, the ALJ determined that plaintiff does not have an impairment or a

22  combination of impairments that meets or medically equals any of the impairments in the Listing.

23  [AR at 14.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2]

24  _____

25  [1]   The ALJ concluded that plaintiff met the insured status requirements of the Social
    Security Act through December 31, 2013. [AR at 12.]

26
    [2]   RFC is what a claimant can still do despite existing exertional and nonexertional
27  limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps
    three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which
28                                                                                    (continued...)

1    to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b),[3] except "she is able to

2    occasionally balance, stoop, kneel, crouch, crawl, and climb.  In addition, she is able to perform

3    occasional overhead reaching with the bilateral upper extremities." [AR at 15.]  At step four, based

4    on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is unable to perform

5    any of her past relevant work as a home attendant and teacher aide.  [AR at 19, 44-45.]  At step

6    five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there

7    are jobs existing in significant numbers in the national economy that plaintiff can perform, including

8    work as an "inspector" (Dictionary of Occupational Titles ("DOT") No. 529.687-114), "packager"

9    (DOT No. 559.687-074), and "office helper" (DOT No. 239.567-010).  [AR at 20, 45.]  Accordingly,

10   the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of

11   August 1, 2010, through April 22, 2014, the date of the decision.  [AR at 20-21.]

12

13                                                    **V.**

14                                      **THE ALJ'S DECISION**

15        Plaintiff contends that the ALJ erred when he:  (1) failed to properly develop the record; and

16   (2) considered plaintiff's subjective symptom testimony.  [Joint Stipulation ("JS") at 3.]  As set forth

17   below, the Court agrees with plaintiff, in part, and remands for further proceedings.

18   /

19   /

20   **A.     FAILURE TO DEVELOP THE RECORD**

21   _____

22        [2](...continued)
     the ALJ assesses the claimant's residual functional capacity."  Massachi v. Astrue, 486 F.3d 1149,

23   1151 n.2 (9th Cir. 2007) (citation omitted).

24        [3]    "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying
     of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in

25   this category when it requires a good deal of walking or standing, or when it involves sitting most
     of the time with some pushing and pulling of arm or leg controls. To be considered capable of

26   performing a full or wide range of light work, you must have the ability to do substantially all of
     these activities. If someone can do light work, we determine that he or she can also do sedentary

27   work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for
     long periods of time."  20 C.F.R. §§ 404.1567(b), 416.967(b).

28

                                                     5

Plaintiff argues that the ALJ did not fully and fairly develop the record because he "failed to obtain an appropriate consultative examination to determine the severity of plaintiff's physical impairments and to determine what limitations plaintiff would have from her physical impairments." [JS at 3.]  Specifically, plaintiff notes that the ALJ relied on the "only opinion evidence in the file," which was from the State Agency review physicians, who "were only reviewing physicians," as there were no opinions or statements in the record from plaintiff's treating physicians about her functional limitations.  [Id. (citing AR at 19).]  Plaintiff argues, therefore, that because there were "minimal medical records in the file," a consultative examination "would have provided more evidence regarding [her] physical impairments and limitations from someone who actually examined" her.  [Id. (citing AR at 19).]  She contends that the ALJ has a duty to fully and fairly develop the record, and that had he sent plaintiff for a consultative examination, "he may have come to a different conclusion regarding Plaintiff's physical impairments and restrictions on Plaintiff's ability to perform work-related activities."  [JS at 3-4.]

Defendant responds that this issue has been waived because at no time during the administrative process did plaintiff raise the issue that the record was in any way deficient.  [JS at 5.]  Even if not waived, defendant contends that notwithstanding plaintiff's speculations about what might have happened had the ALJ sent plaintiff for a consultative examination, substantial evidence, including nine exhibits of medical records, supported the ALJ's findings.  [JS at 4-5 (citing AR at 256-525).]  Defendant further argues that a consultative examination is normally required where additional evidence needed for a determination is not contained in the medical source records, or where there is an ambiguity or insufficiency in the evidence that must be resolved.  [JS at 6 (quoting Reed v. Massanari, 270 F.3d 838, 842 (9th Cir. 2001)).]  Finally, defendant submits that plaintiff bears the burden to establish the severity of her symptoms, and she did not meet her burden.  [Id.]

As a general matter, it is plaintiff's duty to prove she is disabled.  Mayes, 276 F.3d at 459; 42 U.S.C. § 423(d)(5)(A) (claimant must furnish medical and other evidence of her disability); 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have impairment(s) and how severe it is during the time you say you are disabled").  While plaintiff bears the burden

1  of proving disability, the ALJ in a social security case has an independent, "'special duty to fully
2  and fairly develop the record and to assure that the claimant's interests are considered.'" Smolen
3  v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th
4  Cir. 1983)); Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citation omitted).  This duty
5  is triggered only when there is ambiguous evidence or when the record is inadequate to allow for
6  proper evaluation of the evidence.  Mayes, 276 F.3d at 459-60.  This principle does not allow a
7  plaintiff to shift her own burden of proving disability to the ALJ.  Id. at 459.  One of the tools
8  available to an ALJ in developing a record is the consultative examination.  See 20 C.F.R. §§
9  404.1512(e), 404.1517 ("If your medical sources cannot or will not give us sufficient medical
10  evidence about your impairment for us to determine whether you are disabled . . . , we may ask
11  you to have one or more physical or mental examinations or tests.").  The Commissioner has
12  broad latitude in ordering such an examination when there is ambiguity or insufficiency in the
13  record.  Reed, 270 F.3d at 842 (citation omitted).  A consultative examination is normally required
14  where there is an indication of a change in a claimant's condition that is likely to affect the
15  claimant's ability to work, and the current severity of the claimant's impairment is not established.
16  See 20 C.F.R. § 404.1519a(b)(4).

17      The Court rejects plaintiff's contention that the ALJ's failure to request a consultative
18  examination warrants reversal or remand.

19      First, plaintiff has the burden of proving that she is disabled.  Mayes, 276 F.3d at 459.
20  Thus, she must provide medical evidence showing her impairments and how severe they were
21  during the time she claims she was disabled.  Id. (quoting 20 C.F.R. § 404.1512(a), (c)).  Here,
22  the ALJ thoroughly considered plaintiff's medical records from both before and after her February
23  27, 2013, anterior cervical discectomy at the C5-C6 level.  [AR at 17-19.]  Among other things he
24  reviewed and noted the following records:  plaintiff received regular medication treatment for low
25  back pain, neck pain, and left shoulder pain between January 2010 and February 2013; in April
26  and June 2011, plaintiff presented at the emergency department complaining of neck pain and left
27  arm pain and was diagnosed with neck pain with radiculopathy, and trapezius sprain and shoulder
28  pain respectively; x-rays of plaintiff's left shoulder and lumbar spine in August 2011 showed no

acute process and no acute osseous abnormality respectively; plaintiff had physical therapy for her cervical spine and left shoulder pain from September through December 2011, and from April to May 2012; an October 2011 emergency room visit for left shoulder pain showed full active range of motion of the neck and left shoulder; a CT scan of plaintiff's cervical spine on March 7, 2012, showed mild degenerative disc disease with mild disc space narrowing and small endplate osteophytes at C5-C6 and C7-T1; a March 2012 MRI of the cervical spine showed only mild congenital canal narrowing throughout, and mild foraminal compromise, a posterior disc bulge bordering on disc protrusion with no cord compression at C3-C4 and C4-C5, and left paracentral disc extrusion flattening the cord with moderate left foraminal compromise and probability of impingement of the exiting left nerve root as well as moderate central canal stenosis at C5-C6; in November 2012, treatment notes showed decreased motor strength at the left upper extremity and tenderness to palpation along the cervicotrapezius ridge, decreased sensation on the left at C5-C6 and radiating pain from C5-C6, and she was diagnosed with cervical spine stenosis; a February 21, 2013, preoperative surgical examination found severe pain to the upper left extremity, generalized weakness of the triceps and biceps on the left side, and that plaintiff was unable to make a full fist with her left hand -- she was diagnosed with a large herniated nucleus pulposus at C5-C6; on March 20, 2013, following the surgery, plaintiff had motor weakness at the left upper extremity and reported that she was unable to grab with her left upper extremity; she had physical therapy for her neck, back and shoulder from May to July 2013; an August 2013 emergency room visit for cervical strain found no extremity or lumbar spine deformity or tenderness, intact motor strength, and intact sensation to light touch; an August 2013 CT scan of her cervical spine showed normal alignment, spinous processes, and relationship of the facets; and a January 2014 emergency room visit found plaintiff had no cervical or lumbar tenderness, full active range of motion without pain at the neck, no extremity deformity or tenderness, and intact motor strength and sensation to light touch.  [AR at 16-18 (citations omitted).]

Based on a review of plaintiff's medical records, the State agency consultant, A. Lizarraras, M.D., issued a report on July 20, 2012.  [AR at 59-60.]  Dr. Lizarraras found plaintiff able to perform light work except limited to occasional crawling and climbing of ladders, ropes, and

scaffolds, frequent climbing of ramps and stairs, and limited overhead reaching with her left upper extremity. [Id.] On May 9, 2013, Dr. Lizarraras issued an opinion for the period from August 1, 2010, to February 26, 2013, finding the same limitations, as well as only occasional left overhead reaching with her left upper extremity. [AR at 82-83.] On May 9, 2013, Dr. Lizarraras issued another opinion, for the period from February 27, 2013, to February 27, 2014, finding that plaintiff would be able to perform light work "within 12 months of [her] recent C5-6 fusion," except she would be limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling, as well as to frequent overhead reaching bilaterally. [AR at 84-85.]

The ALJ gave significant weight to the opinions of Dr. Lizarraras, finding that the doctor's opinions are "significant [sic] more well-supported and consistent with the medical record as a whole," including the fact that although the record shows plaintiff "received pain medication treatment and underwent surgical treatment for her neck and left shoulder pain," the "diagnostic findings of the cervical spine upon x-rays, CT scans, and MRIs are predominantly mild with no severe findings." [AR at 19 (citations omitted).] Additionally, he found that plaintiff's "treatment notes and emergency room records only document minimal positive objective findings upon examination."[4] [Id. (citations omitted).] Here, the ALJ made no finding that the record was ambiguous or inadequate to properly evaluate plaintiff's impairments and limitations, nor does plaintiff point to any such ambiguity. [See JS at 3-4.] Thus, the ALJ did not fail to develop the record by not ordering a consultative examination as the evidence was not ambiguous and the

---

[4]   Although the opinion of a non-examining physician "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician," state agency physicians are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i); Soc. Sec. Ruling 96-6p; Bray v. Astrue, 554 F.3d 1219, 1221, 1227 (9th Cir. 2009) (the ALJ properly relied "in large part on the DDS physician's assessment" in determining the claimant's RFC and in rejecting the treating doctor's testimony regarding the claimant's functional limitations). Reports of non-examining medical experts "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

1    record was adequate to properly evaluate plaintiff's physical impairments and limitations.[5]

2    **B.    CREDIBILITY**

3         Plaintiff contends the ALJ failed to articulate legally sufficient reasons for rejecting plaintiff's

4    subjective symptom testimony. [JS at 7-10.]  Defendant contends that the ALJ properly based his

5    credibility finding on the lack of objective evidence to support plaintiff's allegations, and on her

6    reason for leaving her prior employment.  [JS at 11-12 (citations omitted).]

7         The ALJ noted the following in his decision:

8         In an updated Disability Report, it is indicated that [plaintiff] has a lot of nightmares
          and is unable to sleep alone.   She alleges memory problems due to her
9         medications.  She claims that her pain medication does not help to alleviate her
          worsened pain.  In another updated Disability Report, it is indicated that [plaintiff] is
10        unable to care for herself due to her pain and she is unable to sleep due to constant
          nightmares.  She alleges that she experiences severe tremors at her left arm and
11        that she is unable to use her left arm.  [Plaintiff] alleges that her conditions affect her
          ability to lift, squat, bend, stand, reach, walk, kneel, climb stairs, remember,
12        complete tasks, concentrate, and follow instructions.  [Plaintiff] testified that she
          sometimes required help from her seventeen-year-old daughter to get dressed and
13        bathe as well as do laundry.  She stated that she is unable to carry anything with the
          left hand and that she was unable to walk or sit for long periods.  She claimed that
14        she spends her days on the sofa, watching movies.

15   [AR at 15 (citations omitted).]  After summarizing the medical evidence, the ALJ concluded:

16        After careful consideration of the evidence, the undersigned finds that [plaintiff's]
          medically determinable impairment could reasonably be expected to cause the
17        alleged symptoms; however, the claimant's statements concerning the intensity,
          persistence and limiting effects of these symptoms are not entirely credible for the
18        reasons explained in this decision.

19        [Plaintiff's] allegations of severe disabling neck and left shoulder pain are not well-
          supported by the medical evidence detailed above.[6]
20
          There is evidence that [plaintiff] stopped working for reasons not related to the
21        allegedly disabling impairments.  [Plaintiff] indicated on her Adult Disability Report
          that she stopped working on April 30, 2010, because her in-home support client was
22        too mentally disturbed for her to continue working for him.

23   [AR at 18 (citation omitted).]

24        "To determine whether a claimant's testimony regarding subjective pain or symptoms is

25   _____

26        [5]   Nothing in the Memorandum Opinion is intended to preclude the ALJ on remand from
          ordering a consultative examination.

27
          [6]   The ALJ is referring to the same medical evidence the Court summarized with respect to
28   plaintiff's first issue.

credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 1036 (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  Second, if the claimant meets the first test, the ALJ may reject the claimant's testimony about the severity of her symptoms "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).  Factors to be considered in weighing a claimant's credibility include:  (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014); 20 C.F.R. § 404.1529(c).

Where, as here, plaintiff has presented evidence of an underlying impairment, and the ALJ did not find evidence of malingering [see generally AR at 15-19], the ALJ's reasons for rejecting a claimant's credibility must be specific, clear and convincing.  Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014) (citing Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012)); Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015).  "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Burrell, 775 F.3d at 1138 (quoting Lester, 81 F.3d at 834) (quotation marks omitted).  The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" Brown-Hunter, 806 F.3d at 493 (quoting Bunnell, 947 F.2d at 345-46).  A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." Bunnell, 947 F.2d at 346.  As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient.  Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

1    Here, in discounting plaintiff's credibility, the ALJ specifically relied on the following:  (1)

2    plaintiff's pain complaints were not supported by objective evidence; and (2) plaintiff left her last

3    employment for reasons other than her impairments.  [AR at 18, 19.]

4

5        **1.    Objective Evidence**

6    The ALJ found that plaintiff's allegations are not consistent with, or well supported by, the

7    objective medical evidence.  [AR at 18, 19.]  Plaintiff contends that this is not a specific, clear and

8    convincing reason to discount her allegations, and also that the ALJ failed to address "the specific

9    restrictions and complaints" testified to by plaintiff.  [Id.]  Plaintiff asserts that because her

10   symptoms are well documented in the treatment notes, "scarce though they might be," the ALJ

11   erred in finding they were not well documented, and this reason for rejecting her testimony is not

12   clear and convincing.  [JS at 10.]

13   While a lack of objective medical evidence supporting a plaintiff's subjective complaints

14   cannot provide the only basis to reject a claimant's credibility (see Light v. Soc. Sec. Admin., 119

15   F.3d 789, 792 (9th Cir. 1997)), it is one factor that an ALJ can consider in evaluating symptom

16   testimony.  See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical

17   evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ can

18   consider in his credibility analysis."); accord Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir.

19   2001).

20   Here, however, the ALJ reviewed the medical evidence, stated his conclusion that plaintiff's

21   testimony was not credible "for the reasons explained in this decision,"[7] and then stated his finding

22   that "[o]verall, [plaintiff's] allegations are not consistent with the objective medical evidence."  [AR

23   at 18, 19.]  As the Ninth Circuit recently held, "an ALJ's 'vague allegation' that a claimant's

24   testimony is 'not consistent with the objective medical evidence,' without any 'specific finding in

25   support' of that conclusion, is insufficient."  Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d

26   _____

27       [7]    As noted previously, the only two stated reasons for discounting plaintiff's allegations were
     their alleged inconsistency with the objective medical evidence, and plaintiff's non-impairment-
28   related reason for stopping work.

1090, 1103 (9th Cir. 2014)  (citation omitted).  The "ALJ must identify the testimony that was not

credible, and specify 'what evidence undermines the claimant's complaints.'" Id. (citation omitted);

Brown-Hunter, 806 F.3d at 493.  In this case, the ALJ failed to identify the testimony he found not

credible and to "link that testimony to the particular parts of the record" supporting his non-

credibility determination.  Brown-Hunter, 806 F.3d at 494.  In short, as in Brown-Hunter, "[t]his is

not the sort of explanation or the kind of 'specific reasons' we must have in order to review the

ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not

arbitrarily discredited," nor can the error be found harmless.   Id. at 493 (rejecting the

Commissioner's argument that because the ALJ set out his RFC and summarized the evidence

supporting his determination, the Court can infer that the ALJ rejected the plaintiff's testimony to

the extent it conflicted with that medical evidence, because the ALJ "never identified *which*

testimony [he] found not credible, and never explained *which* evidence contradicted that

testimony") (citing Treichler, 775 F.3d at 1103, Burrell, 775 F.3d at 1138).

       Thus, this was not a specific, clear and convincing reason for discounting plaintiff's

credibility.[8]

### 2.    Reason for Leaving Prior Employment

       The ALJ appears to have discounted plaintiff's allegations based in part on the fact that she

"stopped working for reasons not related to the allegedly disabling impairments." [AR at 18 (noting

that "[plaintiff] indicated . . . that she stopped working on April 30, 2010, because her in-home

support client was too mentally disturbed for her to continue working for him").]  Defendant argues

that the fact that a claimant left employment for a non-disability-related reason "is always a valid

credibility factor."  [JS at 11 (citing Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001)).]

       Plaintiff does not dispute that the record shows that she stopped working on April 30, 2010,

---

[8]    Even assuming this was a specific, clear and convincing reason to discount plaintiff's
credibility, because this reason by itself cannot be the sole legally sufficient reason for discounting
plaintiff's subjective symptom testimony, the ALJ's credibility determination would still fail because
the Court finds that the only other reason given by the ALJ to discredit plaintiff's testimony also
was not legally sufficient.

13

1  for reasons not related to her impairments.  [See JS at 9.]  However, plaintiff never alleged that

2  she stopped working in April 2010 due to her impairments; neither did she allege that this was the

3  date she became unable to work.  In fact, it was not until August 2010 -- several months after she

4  stopped working -- that she determined she was no longer able to work.[9]

5      Defendant's reliance on Bruton is misplaced.  Unlike in Bruton, in which the Ninth Circuit

6  found the ALJ permissibly discounted the claimant's credibility where the alleged onset date was

7  the same date the plaintiff was laid off from his job, plaintiff here does not contend that her date

8  of onset coincides with her date last employed, or that she left work because of her impairment(s).

9  In fact, given that three months elapsed between April 30, 2010 -- plaintiff's date last employed --

10  and her alleged disability onset date of August 1, 2010, the Court finds that the reason plaintiff

11  stopped working in April 2010 does not in any way detract from her assertion that she became

12  unable to work as a result of her impairment(s) as of August 2010.[10]  See McGowan v. Astrue,

13  2012 WL 5390337, at *5 (W.D. Wash. Oct. 17, 2012) (finding that "the reasons [plaintiff] left her

14  2006 job was [sic] not a proper basis to discount her credibility" because the job "ended long

15  before her alleged [disability] onset"); Gomez v. Colvin, 2013 WL 5524863, at *13 (C.D. Cal. Oct.

16  4, 2013) (noting that plaintiff never claimed to have stopped working because she was disabled

17  and the alleged onset date was a few months after she stopped working).  In fact, under the

18

19      [9]   Plaintiff notes that the medical records reflect that she was seeking medical treatment for
20  her pain around August 2010.  [JS at 9 (citations omitted).]  For instance, in September 2010 she
    was seen for "a sore throat, headache, and body aches."  [Id. (citing AR at 339-40).]  Defendant
21  argues that the September 2010 records referenced by plaintiff, documenting a sore throat,
    headache, and body aches, took place nearly five months after plaintiff stopped working and
22  provide no indication of any condition resulting in any functional limitations.  [Id.]  Plaintiff also
    points to various medical records that reflect her complaints of neck, left arm, and low back pain
23  from April 2011 through 2013, as well as her February 27, 2013, neck surgery, after which she
    was still experiencing pain.  [Id. (citing AR at 320-21, 361-63, 385, 387, 388, 392, 443-44, 469,
24  470, 471, 476, 478); see also AR at 264-65, 280, 298, 299, 302, 307, 309, 312, 315, 321, 459,
    460, 463, 464, 465, 466, 472, 474, 475, 477, 479.]
25

26      [10]   Notwithstanding the fact that plaintiff alleged an onset date of August 1, 2010, as the ALJ
    himself acknowledged:  plaintiff "received regular medication treatment from her primary care
27  provider for her low back pain, neck pain, and left shoulder pain from January of 2010 . . . ."  [AR
    at 16 (emphasis added); see also AR at 486 (January 13, 2010, treatment note indicating plaintiff
28  presented complaining of back pain).]

1  circumstances here, plaintiff's reason for leaving her employment in April 2010 is irrelevant to a

2  credibility determination as it does not appear to be inconsistent with any other statement made

3  by plaintiff.

4          Thus, this was not a specific, clear and convincing reason for discounting plaintiff's

5  credibility.

6

7  **3.    Conclusion**

8          Based on the foregoing, the ALJ's credibility determination was not sufficiently specific,

9  clear and convincing, to allow this Court to conclude that the ALJ rejected plaintiff's testimony on

10 permissible grounds and did not arbitrarily discredit her subjective symptom allegations.  Remand

11 is warranted on this issue.

12

13 **VI.**

14 **REMAND FOR FURTHER PROCEEDINGS**

15         The Court has discretion to remand or reverse and award benefits.  McAllister v. Sullivan,

16 888 F.2d 599, 603 (9th Cir. 1989).   Where no useful purpose would be served by further

17 proceedings, or where the record has been fully developed, it is appropriate to exercise this

18 discretion to direct an immediate award of benefits.  See Lingenfelter, 504 F.3d at 1041; Benecke

19 v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004).  Where there are outstanding issues that must

20 be resolved before a determination can be made, and it is not clear from the record that the ALJ

21 would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is

22 appropriate.  See Benecke, 379 F.3d at 593-96.

23         In this case, there are outstanding issues that must be resolved before a final determination

24 can be made.   In an effort to expedite these proceedings and to avoid any confusion or

25 misunderstanding as to what the Court intends, the Court will set forth the scope of the remand

26 proceedings.  First, because the ALJ failed to provide specific, clear and convincing reasons,

27 supported by substantial evidence in the case record, for discounting plaintiff's subjective symptom

28 testimony, the ALJ on remand shall reassess plaintiff's subjective allegations and either credit her

testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony. <u>Treichler</u>, 775 F.3d at 1103. Finally, the ALJ shall reassess plaintiff's RFC and determine, at step five, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the national economy that plaintiff can still perform.[11]

## VII.

## <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED:  July 12, 2016

_____

PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[11]   Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to return to her past relevant work.